Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

# LAW OFFICE OF
# PETER A. ROMERO

August 31, 2022

**VIA ECF**
Hon. Ramon E. Reyes, Jr.
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Karina Torres v. Ultimate Care, Inc., et al.*
       Docket No.: 21-cv-02351 (EK) (RER)

Dear Judge Reyes:

This firm represents Plaintiff Karina Torres and opt-in Plaintiff Yaritzy Rivera-Torres (collectively as "Plaintiffs") in the above-referenced matter against Defendants Ultimate Care, Inc., Chester Spitzer and Carol Shafir, their alleged former employers.  In the Complaint, Plaintiffs assert claims for failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA") and New York Labor Law, failure to pay Plaintiffs at their agreed upon rate of pay for certain hours worked, failure to provide accurate wage statements for each pay period under NYLL § 195(3), and failure to provide a wage notice at their times of hire under NYLL § 195(1). D.E. 1.  The parties have reached a resolution of this action.  Accordingly, Plaintiffs now submit this motion for approval, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiffs' FLSA claims.[1]  The parties' proposed Negotiated Settlement Agreement and Release (the "Agreement") is attached as Exhibit A.

## Procedural History

On April 28, 2021, Plaintiff Torres filed her Complaint. D.E. 1.  On July 30, 2021, Defendants filed their Answer to the Complaint. D.E. 14.  On August 23, 2021, the Court entered its Order in FLSA Case Requiring Discovery and Setting Initial Pretrial Discovery and Mediation Schedule. D.E. 15.  After exchanging discovery and engaging in settlement negotiations under that order, the parties determined that settlement could not be reached at that time.

---

[1] Plaintiff does not seek the Court's approval with respect to the settlement of Plaintiffs' NYLL claims as there is no requirement for the Court to do so.  However, although NYLL claims do not require the Court's approval, the parties' settlement agreement, attached as Exhibit A, includes the resolution of all of Plaintiffs' claims asserted in this lawsuit.

On December 3, 2021, the Court granted an order conditionally certifying a collective of non-exempt scheduling coordinators and placement coordinators with respect to the asserted FLSA claims. D.E. 21.  Plaintiff Torres subsequently distributed notice of this FLSA collective action.  On February 8, 2022, opt-in Plaintiff Yaritzy Rivera-Torres submitted her consent to join form. D.E. 22.

After exchanging relevant discovery, on June 20, 2022, EDNY Mediator Barry Peek conducted a mediation with the parties.  As a result of Mediator Peek's assistance, the parties reached a settlement in principle following contentious, arms'-length negotiations at mediation.  Thereafter, the parties negotiated the terms of their formal settlement agreement.

The settlement agreement between the Plaintiffs and the Defendants provides for payment of a gross sum of $31,500.00, inclusive of attorneys' fees and costs.  Pursuant to the Agreement, Plaintiff Torres will receive a total of $19,363.24 and opt-in Plaintiff Rivera Torres will receive a total of $968.16, and Plaintiffs' counsel will receive a total sum of $11,168.60, consisting of $10,165.70 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $1,002.90 for litigation costs.

## The Court Should Approve the Settlement Agreement as Fair and Reasonable

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court.  Cheeks, 796 F.3d at 206-207.  "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted).  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted).  Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  The Wolinsky factors require consideration of the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Defendants – a corporation and its alleged owners – operate  a New York State licensed home care services agency.  Plaintiffs assert Defendants employed them as non-exempt scheduling coordinators.  Plaintiffs contend that their primary duties as scheduling coordinators involved managing the placement of caregivers, scheduling home health aides for Defendants' clients, and resolving scheduling conflicts and staffing issues. Throughout their employment, Plaintiffs allege that they commonly worked more than forty hours during many workweeks.  In addition to their normal work schedule, Plaintiffs assert that Defendants required them to work on-call shifts on both Saturdays and Sundays and were paid a fixed rate of pay for all of their hours worked during those periods.  Throughout their employment, Plaintiffs also allege that Defendants automatically deducted thirty minutes of

wages per day for a meal break that Plaintiffs did not take or receive and, as a result, Plaintiffs contend that Defendants failed to pay them at any rate of pay for these hours worked. As a result, despite frequently working in excess of forty hours in a workweek, Plaintiffs assert that Defendants failed to pay them their statutorily mandated overtime rate of pay of one and one-half times their applicable regular rate of pay for their work performed in excess of forty hours each workweek during their on-call shifts and for their allegedly automatically deducted meal periods in violation of the FLSA.

Critically, the parties have several key disputes that impact liability and damages. Defendants contend that Plaintiffs were paid correctly for their hours worked. Defendants strenuously contest the number of hours worked by Plaintiffs during their workweeks, asserting that Plaintiffs worked far fewer hours during their on-call shifts during the weekends than alleged and disputing that Plaintiffs worked without uninterrupted meal periods during their shifts. Defendants contend that Plaintiffs were fully and properly compensated for their on-call shifts and that any deduction from hours worked for a meal period was proper. Defendants have offered certain time and compensation records in support of their positions. Defendants' records, if credited by a trier of fact in whole or in part, would significantly reduce or potentially defeat Plaintiffs' claims. While Plaintiffs dispute Defendants' records with respect to their claims that they were improperly compensated, as alleged, Plaintiffs recognize that the existence of Defendants' records will create an additional hurdle to overcome at trial. Each of these disputes will turn primarily on the credibility of the parties regarding Plaintiffs' hours worked and the resolution of these disputes would have a significant outcome on liability and Plaintiffs' damages at trial. Additionally, Defendants contend that Plaintiffs are not entitled to liquidated damages, whereas Plaintiffs assert that liquidated damages should be awarded because Defendants cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA.

Plaintiffs calculated their damages in order to assess their best possible recovery in this litigation. Making all reasonable assumptions in their favor, according to Plaintiffs' calculations, Plaintiff Torres' best potential recovery under the FLSA at trial amounts to $37,626.38 for unpaid FLSA wages and $37,626.38 for FLSA liquidated damages and opt-in Plaintiff Rivera Torres' best potential recovery under the FLSA at trial amounts to $1,167.14 for unpaid FLSA wages and $1,167.14 for FLSA liquidated damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in formal written and document discovery, and depositions of Plaintiffs, Defendants, and likely several non-party witnesses. This settlement also avoids potential motions for summary judgment and a time consuming and risky trial, which could result in a months or years long delay to obtaining a potential recovery for the Plaintiffs, even if they are successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn substantially upon the credibility of the parties. As a result, all parties face a serious risk of losing at trial, in whole or in part. Even if Plaintiffs were successful on their FLSA overtime wage claims, but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiffs would not be entitled to liquidated damages under the FLSA, reducing Plaintiffs' available FLSA damages by half. If Defendants could establish that the alleged violations were not willful, Plaintiffs' FLSA claims would be subject to a two-year statute of limitations, which would further reduce Plaintiff Torres' unpaid FLSA damages to $31,044.59

and Plaintiff Rivera Torres' unpaid FLSA damages to $547.86. Thus, by settling at this stage, Plaintiffs ensure that they will receive a substantial recovery in this matter. Indeed, under the terms of the parties' settlement, Plaintiffs will receive the vast majority of their alleged unpaid wages under the FLSA, even after deducting for attorneys' fees and litigation expenses.

Accordingly, although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the significant possibility that they could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiffs will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, the release in the Agreement is limited to wage-related claims. The release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. See Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" but notes additional claims may be released in appropriate circumstances); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse or overreach in settlements). Here, the release is narrowly tailored to release only claims relevant to the instant action. Likewise, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood, 2015 WL 4111668, at *1 (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181). Moreover, the Agreement does not contain a non-disclosure or non-disparagement provision.

Additionally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations requiring the assistance of a mediator to resolve. Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

**The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $10,165.70, or one-third of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2) (same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiffs' counsel's requested fees of one-third of the net settlement sum after deducting for litigation costs is certainly reasonable.

Additionally, the reasonableness of the fee for which approval is requested here is further solidified by "[a]pplying the lodestar method as a cross check." Guaman v. Ajna-Bar

NYC, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)).  In order to calculate the lodestar check, the Firm multiplied the attorney hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, the Law Office of Peter A. Romero PLLC is a boutique employment litigation law firm, located at 490 Wheeler Road, Suite 250, Hauppauge, New York 11788, with a substantial practice primarily representing plaintiffs in wage and hour matters, including individual, collective action and class action matters, and employment discrimination matters in both state and federal court.

With respect to Peter A. Romero, Esq.'s experience, Mr. Romero graduated from St. John's University School of Law in 2003.  He was admitted to practice in New York in November 2003, the United States District Court for the Southern District of New York in August 2004, and the United States District Court for the Eastern District of New York in October 2004.  Mr. Romero previously worked for a prominent employment law litigation firm as an associate from July 2004 until January 2009 and as a partner from January 2009 until June 2015.  Thereafter, beginning in June 2015 through the present, Mr. Romero has operated his own employment law litigation firm, the Law Office of Peter A. Romero PLLC, as its principle.  That firm employs one senior associate, the undersigned, David D. Barnhorn, Esq., another associate, Matthew Farnworth, Esq., a paralegal, and an administrative assistant, as well as other support staff as needed.  Throughout his legal career, beginning in July 2004 through the present, Mr. Romero has focused his practice almost entirely on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in federal and New York courts.  Indeed, Mr. Romero has been appointed as Class Counsel in numerous class action cases in federal and New York courts.  Moreover, throughout his career, Mr. Romero has conducted numerous trials and arbitrations on behalf of his clients in employment law disputes, including wage and hour matters.  Finally, while employed as a partner at another employment law litigation firm from January 2009 until June 2015, Mr. Romero was responsible not only for his own case load of employment law litigation matters, but also for supervising and revising and approving the work of four associates who each had their own case load of employment law litigation matters, including wage and hour matters.  Mr. Romero is also an active member of the National Employment Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees.  Mr. Romero has also been selected as a Super Lawyer in "Employment Litigation" for the years 2019, 2020 and 2021.

The undersigned, David D. Barnhorn, Esq., graduated *cum laude* from Hofstra University Maurice A. Deane School of Law in 2012.  I was admitted to practice in New Jersey and the United States District Court for the District of New Jersey in November 2012, in New York State in 2013, and the United States District Courts for the Eastern and Southern Districts of New York in 2014.  I have been employed as a senior associate for this Firm since April 2018.  Prior to joining this firm, I worked as an associate at two prominent employment law litigation firms from November 2012 until April 2018.  Throughout my legal career, beginning in November 2012 through the present, I have focused my practice almost entirely on employment law litigation, where a majority of my cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New

Jersey state and federal courts. Additionally, the undersigned has been appointed as Class Counsel in multiple class action cases. Throughout my time as an associate, I have been responsible for actively handling cases in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial and resolution. Moreover, during my career, I have conducted numerous trials and arbitrations on behalf of my clients in employment law disputes, including wage and hour matters. Finally, I have been selected as a Rising Star by Super Lawyers as an "Employment & Labor Attorney" for the years 2016, 2017, 2018, 2019, 2020 and 2021.

Here, if Plaintiffs' counsel were seeking fees pursuant to the lodestar, Plaintiffs would seek hourly rates of $400.00 per hour for Peter A. Romero, Esq., $275.00 per hour for the undersigned, David D. Barnhorn, Esq., and $100.00 per hour for the firm's paralegal, Angelica Villalba.[2] "A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" Spain v. Kinder Stuff 2010 LLC, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)). "The reasonable hourly rates should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted)). Here, based on the customary rates charged in this district and the experience of the attorneys responsible for this matter, hourly rates of $400.00 per hour for Mr. Romero, $275.00 per hour for the undersigned, and $100.00 per hour for the firm's paralegal, Ms. Villalba, are reasonable. Aguilar v. The Fence Guy, Inc., Docket No. 17-cv-07412 (ADS) (AYS), D.E. 30 at Pgs. 4-5 (E.D.N.Y. Dec. 2, 2019), report and recommendation adopted, 2020 WL 1066345, at *1 (E.D.N.Y. Mar. 5, 2020) (awarding the undersigned, Mr. Barnhorn, fees based on an hourly rate of $275.00); Alcantara v. Alon B. Inc., Docket No. 18-CV-5516 (JMA) (AYS), 2021 WL 4463539, at *1 (E.D.N.Y. Sept. 29, 2021) (approving "rates of $400.00 per hour for attorney Peter Romero, Esq., $275.00 per hour for senior associate David D. Barnhorn, Esq., and $100 per hour for paralegal Angelica Villalba" as reasonable "and within the range of similarly experienced attorneys who practice wage and hour cases in the Eastern District of New York."); Solnin v. Sun Life & Health Ins. Co., 2018 WL 4853046, at *3 (E.D.N.Y. Sept. 28, 2018) (awarding mid-level associate with 5 years of experience a rate of $275.00 and noting proper rate for senior associates is up to $325.00 per hour and for experienced partners is between $300.00-$450.00 per hour in this district); Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc., 2017 WL 5564892, at *2 (E.D.N.Y. Nov. 3, 2017), report and recommendation adopted, 2017 WL 5564593 (E.D.N.Y. Nov. 18, 2017) (citing Houston v. Cotter, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017)) (awarding rates of $270.00 to $350.00 to senior associates and noting that "[i]n recent years, courts have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $200 to $450 for partners in law firms, $200 to $325 for senior associates, [and] $100 to $200 for junior associates…"); Carrasco-Flores v. Comprehensive Health Care &

---

[2] While this firm primarily represents clients on a contingency fee basis, we do represent some clients on an hourly basis. In those retainers, depending on each client's respective financial abilities, clients have agreed to compensate Mr. Barnhorn for representation at rates of $300.00 to $500.00 per hour and have agreed to compensate Mr. Romero for representation at rates of $300.00 to $500.00 per hour. Accordingly, the firm's requested rates are well within the normal rates awarded in contingency fee matters and the rates actually received by paying clients.

Rehab. Servs., LLC, 2014 WL 4954629, at *9 (E.D.N.Y. Oct. 2, 2014) (citing Man Wei Shiu v. New Peking Taste, Inc., 2013 WL 2351370, at *13 (E.D.N.Y. May 28, 2013)) ("Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300-$450 for partners, $200-$325 for senior associates, [and] $100-$200 for junior associates…"); Small v. New York City Transit Auth., 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014) (citing Struthers v. City of New York, 2013 WL 5407221, at *7 (E.D.N.Y. 2013)) (recognizing rates of $300.00-$450.00 per hour for partners, $200.00-$300.00 per hour for senior associates, and $100.00-$200.00 per hour for junior associates); Hilton v. Int'l Perfume Palace, Inc., 2013 WL 5676582, at *11 (E.D.N.Y. Oct. 17, 2013) (district court adopting report and recommendation that held "that partners and counsel be compensated at the rate of $450.00 per hour, mid-level associates be compensated at the rate of $325.00 per hour, [and] junior associates be compensated at the rate of $200.00 per hour…"); Ferrara v. Prof'l Pavers Corp., 2013 WL 1210522, at *8 (E.D.N.Y. Feb. 15, 2013), report and recommendation adopted, 2013 WL 1212816 (E.D.N.Y. Mar. 23, 2013) (finding hourly rates of $400.00 for partners, $300.00 for senior associates, and $200.00 for junior associates); see also Baizan Guerrero v. 79th St. Gourmet & Deli Inc., 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (awarding hourly rate for paralegal at $100.00 in FLSA action); Quito v. El Pedragal Rest., Corp., 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Lopez v. PMMT Inc., 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Gesauldi v. Dan Yant Inc., 6 F. Supp. 3d 264, 274 (E.D.N.Y. 2014) (collecting cases) (awarding hourly rate for paralegal at $100.00 and noting "[v]arious courts in this district have approved this rate for paralegal services."); Apolinar v. Glob. Deli & Grorcery, Inc., 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (awarding hourly rate for paralegal at $100.00 in FLSA action).

Here, Plaintiffs' counsel investigated the Plaintiffs' claims, conducted a detailed inquiry regarding Plaintiffs' job duties, their hours worked and compensation received, and Defendants' compensation policies, obtained conditional certification of the FLSA collective action, disseminated notice of the FLSA collective action, engaged in relevant discovery, created an assessment of Plaintiffs' damages, attended mediation, and subsequently negotiated a settlement agreement. Due to the contingent nature of the case, Plaintiffs' counsel undertook these efforts with no ultimate guarantee of compensation and facing substantial risk. Plaintiffs' counsel was zealous in the pursuit of Plaintiffs' litigation objectives and secured a favorable result on the Plaintiffs' behalf. The settlement will be made available to the Plaintiffs without the uncertainty and delay of trial.

As a result, the Firm expended a total of 65.6 billable hours on this matter, as evidenced by counsel's contemporaneous billing records, which are annexed hereto as Exhibit B. Thus, Plaintiffs' attorneys' fees in this matter, when calculated pursuant to the lodestar, amount to $13,240.00. Here, the attorneys' fees sought – $10,165.70 – amount to less than this firm's fees calculated pursuant to the lodestar method.

Lastly, Plaintiffs' counsel seeks reimbursement for $1,002.90 in advanced litigation costs, representing $402.00 for the filing fee for the Complaint, $300.90 for service of process

for the Summons and Complaint, and $300.00 for mediation costs and expenses.  Copies of available invoices are annexed as Exhibit C.

Accordingly, Plaintiffs' counsels' requests for attorneys' fees in the amount of $10,165.70 and expenses in the amount of $1,002.90 should be approved as reasonable.

In light of the foregoing, Plaintiffs respectfully request that the Court approve the parties' settlement and dismiss this matter with prejudice, while retaining jurisdiction over matter to enforce the terms of this settlement.

We thank the Court for its consideration of these requests.

Respectfully submitted,

_____
DAVID D. BARNHORN, ESQ.

C:    All Counsel of Record *via* ECF